IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANTHONY JEFFERSON,

    Plaintiff,

    v.                                           CASE NO.  24-3024-JWL

JACE AHRENS, et al.,

    Defendants.

## MEMORANDUM AND ORDER

Plaintiff brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff is currently incarcerated at the Lansing Correctional Facility in Lansing, Kansas, but the events forming the basis of his Complaint occurred at the El Dorado Correctional Facility ("EDCF") in El Dorado, Kansas.  The Court granted Plaintiff leave to proceed *in forma pauperis*.  On March 11, 2024, the Court entered a Memorandum and Order (Doc. 5) ("M&O") directing the officials responsible for the operation of the EDCF to file a *Martinez* Report.  The M&O provides that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A."  (Doc. 5, at 4.)  The *Martinez* Report (the "Report") has now been filed.  (Docs. 9, 10, 17.)  The Court's screening standards are set forth in detail in the M&O.

### I. Plaintiff's Allegations

Plaintiff alleges that he was in an altercation with Lieutenant Ahrens on October 20, 2023, at EDCF.  (Doc. 1, at 2.)  They went to the floor and separated.  Responding staff were holding Plaintiff down when Ahrens came back over and started beating Plaintiff, punching him in the face, the back of his head, and his lower rib cage 15-20 times.  *Id*. at 2, 7.  Plaintiff asserts that he

was "fully compliant" at the time. *Id.* at 5. Plaintiff states that he had three teeth knocked loose and suffered a deep contusion to his lower ribs. *Id.*

Plaintiff states that he filed an injury claim on October 27, 2023, to which he has not received a response. *Id.* at 7.

Plaintiff asserts claims for deliberate indifference and cruel and unusual punishment in violation of the Eighth Amendment. He alleges that various defendants either participated in the use of excessive force or failed to intervene. Plaintiff names as defendants: Jace Ahrens, EDCF Lieutenant; Allen Mason, EDCF Lieutenant; Matthew Moore, EDCF Deputy Warden; Leonard Moore, EDCF Major; Jaysic Staats, EDCF COII Officer; Cameron Lamb-Hunt, EDCF SST Officer; Daniel Romero, EDCF Disciplinary Officer; and Alex McCollough, EDCF Disciplinary Officer. Plaintiff seeks $100,000 in monetary damages.

## II.  The *Martinez* Report

The Report provides that Plaintiff's current KDOC incarceration began on June 16, 2004, after drug convictions in Harvey County case number 04CR24. (Doc. 9, at 2; Doc. 9–1.) Subsequent to his June 16, 2004 commitment, Plaintiff was convicted of Aggravated Battery in Reno County case 04CR203, Battery Against a Correctional Officer in Reno County case 05CR497 and Battery Against a Correctional Officer/Employee by a Person in Custody in Reno County case 19CR229. *Id.*

The Report disagrees with Plaintiff's description of the incident in several regards and provides additional details not mentioned by Plaintiff. Most notably, the Report explains how the "altercation" between Plaintiff and Lt. Ahrens began. According to the Report, Plaintiff approached DWO Moore in the East Gym asking if he could use the bathroom in the West Gym. (Doc. 9-4, at 1.) Moore refused, saying the bathroom was closed. *Id.* Plaintiff responded that he

would just "piss" on the captain's door. *Id*. He began to walk toward the captain's office. *Id*. Moore told Lt. Ahrens to follow him and if he did urinate on the captain's office door, to place him in restricted housing. *Id*. Ahrens witnessed Plaintiff stop and urinate on the captain's office door. (Doc. 9-3, at 2.) He gave Plaintiff multiple orders to put his hands out to be restrained, and Plaintiff refused. *Id*. Plaintiff turned and punched Ahrens in the left side of his face with his right hand and attempted to punch him again with his left hand. *Id*. Ahrens then wrapped his arm around Plaintiff's shoulder and head as other officers arrived to help. (Doc. 9-2, at 1.) Plaintiff "latched on to the left side of [Ahrens' chest] biting [him]." *Id*. When they went to the ground, Plaintiff was still biting Ahrens, so Ahrens struck him multiple times on the right side of his face. (Doc. 9-3, at 2.) Ahrens got to his knees, and Plaintiff tried to bite his thumb. (Doc. 9-2, at 1.) Ahrens delivered 2 to 3 elbow strikes aiming for Plaintiff's upper back but some hit the back of his head. *Id*. Plaintiff was still refusing to give up his hand to be restrained, so Ahrens delivered a "fluid knee strike" to his left side. *Id*.

Plaintiff was eventually restrained in a mobile restraint chair and transported to B-Cellhouse. (Doc. 9-3, at 2; Doc. 9-6, at 1.) Medical attempted to assess Plaintiff after the incident, but he refused medical attention. (Doc. 9-12, at 1.) However, personnel noted that he had no visible injuries and a steady and stable gait. *Id*.; Doc. 10-1, at 30.

Plaintiff's medical records show that he complained of loose and bleeding teeth during dental visits on October 24 and October 30, 2023. On November 1, 2023, a panoramic x-ray was done. (Doc. 10-1, at 60.) The x-ray showed no damage, and Plaintiff was advised that his teeth should tighten up in a few weeks. *Id*. He was again seen by dental providers on November 27, December 12, and December 13, 2023. The dentist explained that the tooth mobility at that point was not significant and the gum bleeding and inflammation was due to tartar. *Id*. at 113.

Plaintiff had complained of chronic back pain prior to the October 20, 2023, incident. *See id.* at 1-2 (record of nurse visit on 9/4/23 where Plaintiff complained of severe back pain; long history of complaints of back pain noted); *id.* at 15 (record of physician visit on 9/5/23 mentioning recent lumbar x-ray showing degenerative changes and recommending MRI). After the incident, he first complained of right side pain on October 22 (*see id.* at 38), then complained of left side pain on October 27, 2023 (*id.* at 49). Plaintiff received x-rays of his abdomen and ribs on November 1, 2023, which were normal. *Id.* at 47, 63. He continued to complain of left side pain and expressed concern about kidney stones. *Id.* at 68. He was seen by medical again on November 9 and November 16 and received an MRI on January 9, 2024. *Id.* at 73-78, 83-86. The MRI showed a bulging disc with moderate neural stenosis and no evidence of a fracture. *Id.* at 127.

Ahrens suffered a 1¼ inch gaping wound to his chest as a result of Plaintiff biting him, which required off-site medical care. (Doc. 9-11, at 1-3.) The wound became infected, requiring additional care and resulting in a scar. (Doc. 9-3, at 2.)

The Report includes video footage of the incident, which the Court has viewed. *See* Doc. 17. The footage was taken by two cameras positioned on the ceiling of the gym. The footage of the incident is taken from a distance and does not include sound. It shows Plaintiff walk up to the captain's office door and stop. Then he turns and is gesturing and appears to be speaking. Lt. Ahrens walks up to him, and they appear to be speaking when Plaintiff whips around and strikes Ahrens in the head. Plaintiff and Ahrens end up on the floor. Other officers arrive, and Plaintiff is eventually restrained. Another video shot by an officer on the scene shows that after Plaintiff was fully restrained in the restraint chair, no further force was used.

**III. Discussion**

The use of excessive force is prohibited under the Eighth Amendment's Cruel and Unusual Punishments Clause. *See Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014) (stating that "claims of excessive force involving convicted prisoners arise under the Eighth Amendment"). "An excessive force claim involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." *Winter v. Mansfield*, 2022 WL 3652464, at *8 (10th Cir. 2022) (unpublished) (quoting *Redmond v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018) (quotations and brackets omitted)).

Under the subjective prong, a prison "official has a culpable state of mind if he uses force maliciously and sadistically for the very purpose of causing harm, rather than in a good faith effort to maintain or restore discipline." *Id.* (quoting *Redmond*, 882 F.3d at 936 (quotations omitted)). "Prison officials must balance the need to restore order and discipline against the risk of injury to inmates if force is used, and they must often 'make their decisions in haste, under pressure, and frequently without the luxury of a second chance.'" *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quotations omitted)). In evaluating the subjective prong, relevant factors include "the extent of the inmate's injury, 'the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.'" *Id.* (citing *Hudson*, 503 U.S. at 7 (quotations omitted)).

Plaintiff urinated on the captain's office door, refused to cuff up when repeatedly ordered to do so, punched Ahrens, forcefully resisted being restrained, and bit Ahrens's chest. Plaintiff's

conduct provided the defendants with a good faith basis for using force to control him, to restore discipline and order, and to transport him to restricted housing.  *See Lockett v. Suardini*, 526 F.3d 866, 875–76 (6th Cir. 2008) (finding prison guards had a good faith basis for using force where prisoner did not dispute that he insulted an officer, became "very angered and upset", bit a guard's hand while being escorted back to his cell, and resisted the guards in response to their allegedly excessive use of force).

Given the speed at which events were occurring and given Plaintiff's violent resistance to orders to cuff up, the Court cannot find that the Complaint contains specific facts indicating that the defendants engaged in the "wanton and unnecessary" infliction of pain that constitutes a violation of the Eighth Amendment.  *See Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  This is especially true in light of the principle that prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  *Whitley v. Albers,* 475 U.S. 312, 321–22 (1986).  Plaintiff fails to state a claim for the use of excessive force in violation of the Eighth Amendment.

**IV.  Response Required**

The *Martinez* report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims."  *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987).  The report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence."  *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)).  Thus, at this point in the proceedings the Court does not use the Report to resolve conflicts of fact.  *See Swoboda v. Duback*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining

whether a plaintiff has stated a claim, the district court may not look to the Martinez report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes.").

In light of the Report, the Court is considering dismissal of this matter for failure to state a claim. Plaintiff is granted an opportunity to respond to the Report and to show good cause why dismissal should not be entered. Failure to respond by the Court's deadline may result in dismissal of this action without further notice.

**IT IS THEREFORE ORDERED** that Plaintiff is granted until **October 21, 2024,** in which to respond to the *Martinez* Report and to show good cause why this action should not be dismissed.

**IT IS SO ORDERED**.

**Dated September 20, 2024, in Kansas City, Kansas.**


S/ John W. Lungstrum
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE